FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 1 7 2021

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CURTIS SHANNON,                     *

      Movant,                     *

v.                                  *     Civil No. 1:21-cv-_____
                                          Case No. 1:19-cr-00008-ELR-UNA-1

UNITED STATES OF AMERICA,           *

      Respondent.                 *

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE

COMES Movant, CURTIS SHANNON ("Shannon"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. JURISDICTION

Shannon is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") contemporaneously with this Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing § 2255 Proceedings. See *Liteky v. United States,* 510 U. S. 540, 562 (1994). Under 28 U.S.C. § 2255, federal prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" may move the district "court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

## II. STATEMENT OF THE GROUNDS FOR REVIEW

A.     Whether pretrial counsel's failure to: (1) Communicate with Shannon and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to

proceeding to trial; (2) Conduct an adequate and independent pretrial investigation; and (3) Attempt to negotiate a favorable Plea Agreement deprived Shannon of effective assistance of pretrial counsel under the Sixth Amendment of the Constitution of the United States.

B.      Whether sentencing counsel's failure to Properly object to the quantity of firearms attributable to Shannon deprived him of effective assistance of sentencing counsel and a fair and just sentence.

C.      Whether, in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), Shannon's prosecution under 18 U.S.C. § 922(g) is null and void because the government was not able to prove both that Shannon knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.

## III. STATEMENT OF THE CASE

### A.      Relevant Course of Proceedings and Disposition Below

On July 23, 2019, a grand jury sitting in the United States District Court for the Northern District of Georgia, Atlanta Division, returned a fifteen (15) count First Superseding Indictment charging Shannon and two other co-defendants, Zachary Singh ("Singh") and Dalton Reid ("Reid"). See Doc. 39.[1] Count 1s charged Shannon with Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371. *Id.* Counts 2s-9s charged Shannon with False Statement to a Federal Firearms Dealer, in violation of 18 U.S.C. §§ 922(a)(6) and 2. *Id.* Counts 10s-13s charged Shannon with Transferring a Firearm to an Out-of-State Resident, in violation of 18 U.S.C. §§ 922(a)(5),

---

[1]
      "Doc." refers to the Docket Report in the United States District Court for the Northern District of Georgia, Atlanta Division in Criminal No. 1:19-cr-00008-ELR-UNA-1, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

924(a)(1)(D), and 2. *Id.* Counts 14s-15s charged Shannon with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). *Id.* The First Superseding Indictment also contained a Forfeiture Provision pursuant to 21 U.S.C. § 853(p) and 28 U.S.C. § 2461(c). *Id.*

On November 13, 2019, a Change of Plea Hearing was held and Shannon entered a guilty plea as to Count 14s of the First Superseding Indictment. See Doc. 68.

On March 11, 2020, Shannon was sentenced to a term of 57 months' imprisonment, 3 years Supervised Release, No Fine or Restitution, and a Mandatory Special Assessment Fee of $100. See Docs. 100, 101.

### B. Statement of the Relevant Facts

#### 1. Relevant Offense Conduct

From at least August 2014 through November 2017, Shannon had individuals in the Atlanta, GA area purchase firearms on his behalf. Shannon would then take these firearms to New York, NY and sell them at a profit. See PSR ¶ 36. The individuals Shannon had purchase firearms for him included: Zachary Singh, Dalton Reid, and Rodney Rice. See PSR ¶¶ 20-21, 30-32, 46, 54 and 69. Shannon knew Zachary Singh since the time he was very young because Shannon was married to Zachary Singh's cousin. See PSR ¶ 15. Dalton Reid is related to Zachary Singh and met Shannon through the family at some point also. Rodney Rice met Shannon through Zachary Singh who helped recruit Rice to purchase firearms for Shannon. See PSR ¶ 42.

Specifically, on August 16, 2014, Reid traveled with Shannon, Zachary Singh and others, to the Eastman Gun Show. See PSR ¶¶ 8, 18, 31, 45, 69 and 76. At the Gun Show, Reid purchased 7 firearms from Twiggs Trading Post and 4 firearms from RGW Guns. See PSR ¶ 9, totaling 11 firearms. Reid purchased each of these firearms on behalf of Curtis Shannon who provided Reid with

money to purchase the firearms, instructed Reid as to which firearms to purchase, and paid Reid a minimal amount for purchasing the firearms for Shannon. *Id.*

Between January 12, 2015 and February 3, 2015, Rodney Rice purchased nine firearms for Curtis Shannon. See PSR ¶¶ 17, 20-21 and 76. On each occasion Shannon would provide Rice with the money to purchase the firearms and tell him what firearms to purchase. See PSR ¶¶ 20-21. Rice would then give Shannon the firearms and Shannon would pay Rice a minimal amount. *Id.*

In addition to the firearms purchased for Shannon by Rice and Reid, Zachary Singh admits that it was common for him to purchase firearms for Shannon. See PSR ¶ 41. Shannon would accompany him to gun stores, provide Zachary Singh with the money up front for the guns, and take possession of the firearms immediately after the firearms were purchased. *Id.* Shannon would pay Zachary Singh approximately $25 per firearm to make the purchases. Zachary Singh recalls purchasing at least 4 firearms for Shannon in 2014, 7 firearms for Shannon in 2015, and approximately six firearms for Shannon in 2017 for a total of at least 18 firearms. See PSR ¶¶ 40, 44 and 49-51.

In total between the guns purchased for him by Reid, Rice and Zachary Singh, Shannon possessed and sold at least 38 firearms. For his part, Shannon believes he took approximately 40 to 50 firearms to New York during the same general time frame. See PSR ¶ 36.

2.    Plea Proceeding

On November 13, 2019, a Change of Plea Hearing was held before Judge Eleanor L. Ross. See Doc. 68. Shannon entered into a plea agreement with the government and pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). As part of that plea agreement, the government agreed to recommend that Shannon be sentenced to the low-end of

4

his adjusted guidelines range. The case was referred to the Probation Office for the preparation of the PSR.

### 3. Presentence Report Calculations and Recommendations

Shannon raised three (3) objections to the PSR which have an impact on his guidelines calculation: (1) whether a prior conviction should be considered a crime of violence; (2) what quantity of firearms should be attributed to Shannon; and (3) whether Shannon should be subject to an aggravating role enhancement. The government and counsel for Shannon have conferred on these matters and come to an agreement. Shannon has agreed to withdraw his second objection as the underlying facts in the PSR make clear that more than 24 firearms should be attributed to Shannon. The government conceded that Shannon's first and third objections as to an increase in his base offense level based on a prior conviction for a crime of violence and whether he should receive an enhancement for aggravating role should be sustained. As such, there are no remaining objections which impact the Guidelines for the Court to consider.

The government and Shannon then agreed that his Base Offense Level is a 14 under § 2K2.1(a)(6), that Shannon should receive a 6-level enhancement under § 2K2.1(b)(1)(C), a 4-level enhancement for trafficking of firearms under § 2K2.1(b)(5), and a 3-level reduction for acceptance of responsibility for a Total Offense Level of 21. The government and Shannon also agreed that he is in Criminal History Category IV. His Total Guidelines range is 57-71 months' imprisonment. Therefore, pursuant to the plea agreement entered into with Shannon, the government recommended a sentence of 57-months.

### 4. Sentencing Hearing

On March 11, 2020, a Sentencing Hearing was held before Judge Eleanor L. Ross. See Doc. 100. Court reviewed objections by parties and made rulings. The Court adopted the calculations and

factual findings. The Court and counsel discussed the PSR, as well as reasonable sentence. The Court provided justification for the sentence imposed. Shannon was sentenced to a total of 57 months of incarceration; 3 years of supervised release; $100 special assessment; and additional requirements (see Doc. 101 for details). Limited appellate rights were given. No direct appeal was filed in this case.

## IV. COGNIZABLE ISSUES UNDER § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or his detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would

entitle him to relief." *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F.3d 708 (11th Cir. 2002). However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553. A § 2255.

Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Aron*, 291 F.3d at 715 n.6. "Under 28 U.S.C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U.S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

7

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Eleventh Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759 (1970). "[T]o prove prejudice, [defendant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010).

"Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. See *Dell v. United States*, 710 F.3d 1267 (11th Cir. 2013).

Finally, in a ruling on a motion under § 2255, the District Court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

# V. DISCUSSION

As a preliminary matter, Shannon respectfully requests that this Court be mindful that *pro se* litigants are entitled to liberal construction of their pleadings. See *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165 (11th Cir. 2014) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."); *Haines v Kerner*, 404 U.S. 519, 520 (1972).

**A.** **Pretrial Counsel's Failure To: (1) Communicate with Shannon and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) Conduct An Adequate and Independent Pretrial Investigation; and (3) Attempt to Negotiate A Favorable Plea Agreement Deprived Shannon of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States.**

Shannon's representation in this case was snake-bit from the beginning. Shannon was appointed attorney Samuel Ray Holmes ("Holmes"). He represented him from pre-trial through sentencing.

9

The gravamen of this Shannon's grounds is that serious attorney errors of constitutional proportions deprived him of his Sixth Amendment right to effective assistance of counsel. As shown below, attorney's ineffectiveness raised its ugly head throughout these proceedings. The ineffectiveness of counsel standards and conditions set forth above in *Strickland* are easily and unquestionably met in this case.

1. Communicate with Shannon and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial

Chapter 1, Rule 1.4: Communication of the Georgia Rules of Professional Conduct states that:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation. It is one of the cornerstones of effective legal representation by an attorney.

10

In this case, there was not any reasonable communication from the beginning of this case between Shannon and Holmes, so that he could effectively participate in his defense. Holmes certainly did not meet the standard as set forth above in Rule 1.4 of the Georgia Rules of Professional Conduct or any other professional norm for that matter. he failed to reasonably consult with Shannon about the means to be used to accomplish his objectives other than push Shannon to plead guilty.

In this case, Holmes visited Shannon no more than three (3) times and no more than 30 minutes each visit. The frequency of Holmes' visit is not in question, rather it is the substance of each visit. During Holmes' visit to Shannon, he discussed bond possibilities, time reduction sentence, court dates, and procedure. Holmes never accepted Shannon's phone calls and failed to keep Shannon informed about the case. Instead, Holmes always misinformed Shannon about court dates. Further, no defense strategy was ever discussed with Shannon except for suggesting to Shannon that he should tell on other people because there were individuals maliciously telling on Shannon. However, Shannon had no information to give, therefore, telling on people was not an option.

Adequacy of communication depends in part on the kind of advice or assistance that is involved. Holmes from the beginning had no advice to Shannon as to whether he should plead guilty or proceed to trial. He made Shannon decide for himself.

Holmes only explained the difference of a trial versus a plea deal. However, he failed to consult and explain the general strategy and prospects of success and the likely result in the sentence he would receive should Shannon opt to proceed to trial or plead guilty. The guiding principle is that a lawyer should fulfill reasonable client expectations for information consistent with the duty to act

in the client's best interest. Holmes failed to do so. Hence, Shannon to plead guilty because he thought that was his best option, absent Holmes' professional counsel.

### 2. Failure to Conduct An Adequate and Independent Pretrial Investigation

Defense counsel has the obligation to conduct a "reasonably substantial, independent investigation." *Neal,* 239 F.3d at 688 (quoting *Baldwin v. Maggio,* 704 F.2d 1325, 1332-33 (5th Cir.1983)). The Supreme Court has explained the governing standard:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In this case, Holmes failed to conduct any kind of a reasonable independent pretrial investigation of his case. Holmes failed to research the case law, interview witnesses or investigate the facts of Shannon's case.

There was no independent pretrial investigation to challenge the government's case-in-chief. Holmes failed to move the Court for a private investigator to independently investigate his case. There was not any kind of independent pretrial investigation conducted whatsoever to Shannon's knowledge except for reading the government's case file and discussing it with the government prosecutor. It is well settled in this circuit that a criminal investigation requires investigators to piece together evidence, often circumstantial and from multiple sources, to prove a defendant's innocence

or guilt. See *Sawyer*, 799 F.2d at 1508 ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"(quoting *Strickland*, 466 U.S. at 690-91). Although courts are typically required to show heightened deference to an attorney's strategic decisions supported by professional judgment, where a failure to investigate does not reflect sound professional judgment, such deference is not appropriate. *Id.*

**Fact:** Holmes told Shannon that he would get him released on bond– which never happened. More so, he failed to provide Shannon with the "discovery," despite Shannon's request for it on several occasions. Holmes kept on persuading Shannon that should he tell on someone, he "can go home today." As much as Shannon wanted to go home, he did not have any information on anyone. Not only did Holmes provide misinformation about court dates, he also mentioned defense plans that did not materialize as he turns into a potted plant during court proceedings.

In this case, no pretrial investigation was ever conducted to piece together evidence. Holmes failed to interview witnesses on behalf of Shannon. More importantly, Holmes failed to impeach the government's witness, Zachary Singh. Singh is the person that tied Shannon directly to the conspiracy, and his testimonies against Shannon was the main factor why Shannon received a 6-level gun enhancement under § 2K2.1(b)(1)(C). Shannon provided Holmes with Singh's conflicting affidavits but he failed to dismiss Singh as a credible witness. In Shannon's discovery, there was an affidavit and a recording that were signed by Singh at the time of his arrest for a 924(c) charge (that had nothing to do with Shannon's case). Then ATF agents went to see Singh and asked about Shannon. The agents specifically asked Singh if he gave Shannon any guns, to which he answered, "I did not give him any guns." He also went on to state that, he did not like Shannon and was willing to help the ATF agents in arresting him, but did not give or sell him any guns. Nonetheless, some

13

time later, Singh worked a deal with ATF to get time off of his 924(c) charge and the instant case, hence, Singh changed his story. In his subsequent statement (contained in the PSR), Singh stated that he gave Shannon all the guns that he specifically mentioned in his affidavit. Holmes failed to use Singh's conflicting statements to impeach his credibility as a witness.

To impeach effectively, counsel must have evidence showing that a witness has misstated the truth. A single prior inconsistent statement may impair a witness's credibility. Disclosure of one prior statement does not obviate the prejudice from the suppression of others. Trial outcomes are almost always the result of multiple interwoven causes— *Brady* and *Strickland* violations in this case.

Holmes did not put the government's case to any kind of adversarial test. Had he done so, there is a reasonable probability that Shannon would have been found not guilty at trial or benefitted with a significantly less harsh sentence.

Accordingly, Holmes failed to research and properly prepare this case so that he could inform Shannon of the relevant circumstances and likely consequences of his case so that he could make an informed decision of whether to plead guilty or to proceed to trial.

### 3. Failure to Attempt to Negotiate a Favorable Plea Agreement

When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. See *Lee v. United States*, 582 U.S. ___ (2017). Where a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective assistance. *United States v. Smith*, No. 96-5385, 1998 WL 136564 (6th Cir. Mar.19, 1998).

To obtain relief on an ineffective assistance claim, Shannon ultimately must demonstrate that his attorney's performance was deficient, and that there is a reasonable probability that, but for counsel's deficient performance, he would have proceeded to trial. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("*Strickland*"); see also, *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) ("*Lafler*"); *Missouri v. Frye*, 132 S. Ct. 1399 (2012) ("*Frye*"); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) ("*Padilla*") ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

In *Hill*, the Court considered a *Strickland* claim based on allegations that the petitioner's lawyer had given bad advice that caused him to plead guilty instead of proceeding to trial. While there have been many cases analogous to *Hill*, it has been understood that *Hill* established a rule applicable to other circumstances when lawyers advise their clients at the plea-bargaining stage of the case. Cf. *Lafler*, supra; *Frye*, supra; *Padilla*, 130 S. Ct. at 1485 n.12. For instance, *Hill* has been applied to a case in which a lawyer was found to have provided ineffective assistance of counsel when the defendant rejected a plea deal and proceeded to trial in the face of overwhelming evidence of guilt and lacking any viable defense. See *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991).

The U.S. Supreme Court decided *Lafler* and *Frye* in an effort to provide guidance in how *Hill* applies to differing factual settings, and established constitutional standard applicable in all of the separate phases of a criminal trial where the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice, there is a reasonable probability that the

plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye,* the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

**Fact:** Holmes advised Shannon that he would get him a 30-month plea deal, which never happened.

Because Holmes never expressed his opinion to Shannon as to whether he should proceed to trial or plead guilty; his erroneous assessment of Shannon's case; inaccurate judgment of records; and failure to secure a favorable Plea Agreement from the government, Shannon opted to plead guilty pursuant to a written Plea Agreement, under the assertion that it was his best option. Shannon ended up waiving his appellate rights, although he was not exactly sure what they were.

This present matter is similar to *Lafler* in that Shannon was ill-informed by Holmes of the likely consequences of pleading guilty rather than proceeding to trial. Shannon was forced to plead guilty based on Holmes perpetual hint that pleading guilty is the right way to proceed. Based on assumption, Shannon pled guilty and netted him a 57-month sentence. Had Shannon been properly informed by Holmes, he would have had a correct understanding of the facts, law of the case and likely consequences in order to make an intelligent and informed decision of whether to proceed to trial or to plead guilty without a written Plea Agreement. "It is the lawyer's duty to ascertain if the plea is available, that it would have lead to a shorter sentence and entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts." *Gonzalez v. Crosby*, 545

U.S. 524, 542 (2005). The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. *Lafler*, supra. In other words, if the quality of counsel's advice falls below a certain minimum level, the client's decision whether to plead guilty or proceed to trial cannot be knowing and voluntary because it will not represent an informed choice. *Id.*

Also, whether a defendant pleads guilty or proceeds to trial, he must be aware of "the relevant circumstances and likely consequences" surrounding the plea. *Brady v. United States*, 397 U.S. 742 (1970).

As such, Holmes performed below an objective standard of reasonableness. Had he familiarized himself with the facts and researched the applicable law and sentencing guidelines, he would have been able to correctly inform Shannon of the likely consequences and hurdles that he faced if he pled guilty or proceeded to trial. he simply failed to do so, and as a result, Shannon was prejudiced by receiving a 57-month sentence. *Glover*, supra. Holmes' misrepresentation of material facts, which Shannon wholly relied on, constituted deficient performance. He suffered prejudice from Holmes' acts and omissions when he received a 57-month sentence. As such, Shannon easily meets *Strickland*'s two prong test for ineffective assistance of counsel and relief should be granted in the first instance. Holmes' errors in this case were so blatant and flagrant that the Court can conclude that they resulted from a lack of experience, or neglect rather than an informed professional deliberation. He failed his duty to properly advise Shannon.

Holmes' advice was not a predication, probability, or an estimate, but rather a lack of communication with Shannon. In turn, Shannon had to wholly rely on his erroneous advice. Thus, Shannon was not fairly apprised of the consequences of his decision to plead guilty. In other words,

Shannon's reliance on Holmes' significantly flawed advice about the consequences of pleading guilty rather than proceeding to trial violated his due process rights. See *Hill*, 474 U.S. at 56.

Accordingly, Shannon's conviction and sentence should be vacated for relief in the first instance.

**B.** **Sentencing Counsel's Failure To Properly Object to the Quantity of Firearms Attributable to Shannon Deprived Him of Effective Assistance of Sentencing Counsel and a Fair and Just Sentence.**

Prior to sentencing, the PSR was released by the probation department. Shannon raised three objections that impact that guidelines calculations in the PSR: (1) Shannon's conviction for evading arrest-risk of death does not qualify as a crime of violence; (2) The PSR correctly attributes more than 25 firearms to Shannon; and (3) Shannon should not be subject to a 3-level enhancement for aggravating role. The parties agreed that Shannon's prior conviction for Evading-Arrest Risk of Flight is not a crime of violence and that an aggravating role enhancement under § 3B1.1 should not apply. However, Holmes withdrew the second PSR objection and agreed that Shannon should be subjected to a 6-level enhancement under § 2K2.1(b)(1)(C).

*Alleyne v. United States*, 133 S.Ct. 2151 (2013) made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the statutory mandatory minimum sentence is an element of the crime which must be submitted to the jury. *Alleyne*, 570 U.S. at 116, 133 S.Ct. 2151. In this case, Shannon pled guilty to Count 14s: Possession of a Firearm by a Convicted Felon, to wit: one Jimenez Arms, Model: J.A. Nine, 9mm semi-automatic pistol. Under *Alleyne*, this court is not free to ignore that finding and impose a penalty based on the 56 firearms referenced in the PSR. See *United States v. Simons*, No. 07-CR-00874, 375 F.Supp.3d 379, 487, 2019 WL 1760840 at *6 (E.D.N.Y. Apr. 22, 2019) (citing *Alleyne* and finding that statutory penalties

are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"). Hence, Holmes failed to properly object to Shannon's 6-level enhancement, which eventually led to his 57-month sentence.

**C.** **In Light of _Rehaif v. United States_, 139 S. Ct. 2191 (2019), Shannon's Prosecution Under 18 U.S.C. § 922(g) Is Null and Void Because the Government Was Not Able to Prove Both That Shannon Knew He Possessed a Firearm and That He Knew He Belonged to the Relevant Category of Persons Barred from Possessing a Firearm.**

Shannon's sentence was driven by his conviction under 18 U.S.C. § 922(g). This judgment resulted in a 57-month sentence on Count 14s. As such, because he is actually innocent of said conviction, his felon in possession of a firearm charge should be dismissed and his sentence should be vacated.

18 U.S.C.S. § 922(g) provides that it shall be unlawful for certain individuals to possess firearms. The provision lists nine categories of individuals subject to the prohibition, including felons and aliens who are "illegally or unlawfully in the United States." A separate provision, 18 U.S.C.S. § 924(a)(2), adds that anyone who "knowingly violates" the first provision shall be fined or imprisoned for up to 10 years. The word "knowingly" in 18 U.S.C.S. § 924(a)(2) applies both to the defendant's conduct and to the defendant's status. To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it. By specifying that a defendant may be convicted only if he "knowingly violates" 18 U.S.C.S. § 922(g), Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g). Without knowledge of that status, the defendant may well lack the intent needed to make his behavior wrongful. His behavior may instead be an innocent mistake to which criminal sanctions normally do not attach.

19

Whether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent. In determining Congress' intent, the U.S. Supreme Court starts from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct. When a statute prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.

Petitioner Rehaif entered the United States on a non-immigrant student visa to attend university but was dismissed for poor grades. He subsequently shot two firearms at a firing range. The Government prosecuted him under 18 U. S. C. §922(g), which makes it unlawful for certain persons, including aliens illegally in the country, to possess firearms, and §924(a)(2), which provides that anyone who "knowingly violates" the first provision can be imprisoned for up to 10 years. The jury at Rehaif's trial was instructed that the Government was not required to prove that he knew that he was unlawfully in the country. The jury returned a guilty verdict, which the Eleventh Circuit affirmed. Petitioner sought further review in the United States Supreme Court.

The Court reversed the decision of the lower courts. In a prosecution under §922(g) and §924(a)(2), the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.

In light of *Rehaif*, if for no other reason than 922(g) is one of the most commonly charged federal crimes, and it sure seems like a substantive (and therefore retroactive) rule. Hence, Shannon's felon in possession of a firearm is now null and void because the government was not able to prove

both that Shannon knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Shannon's conviction and/or sentence should be vacated so that he can plea anew, or be resentenced. In the alternative, it is respectfully requested that the Court hold an evidentiary hearing so that Shannon may further prove his meritorious grounds for relief, resolve facts in dispute and expand an incomplete record.

Respectfully submitted,

Dated: May _11_, 2021

CURTIS SHANNON
REG. NO. 72463-019
FCI TALLADEGA
FEDERAL CORR. INSTITUTION
P.M.B. 1000
TALLADEGA, AL 35160
Appearing *Pro Se*